Lisa TOLBERT, Phyllis Jones, and Steve Cooper, Plaintiffs,

v.

CITY OF MEMPHIS, TENNESSEE, Dick Hackett, Mayor of Memphis, Tennessee; John Holt, Police Director, Memphis, Tennessee; and Lt. Jim Hayes, Vice Squad Commander, Memphis Police Department, Memphis, Tennessee, Defendants.

No. 83–2359.

United States District Court, W.D. Tennessee, W.D.

May 27, 1983.

Wayne Emmons, and Rex L. Brasher, Jr., Memphis, Tenn., for plaintiffs.

Robert M. Fargarson, Memphis, Tenn., for defendants.

RULING ON PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION AND DEFENDANTS' MOTION TO DISMISS

McRAE, Chief Judge.

This action was filed on May 3, 1983 by plaintiffs seeking declaratory and injunctive relief against the enforcement of a city ordinance passed by the City Council of Memphis, Tennessee on March 29, 1983. This ordinance provides:

## PERFORMANCES, LEWD AND INDECENT ACTS AND CONDUCT

(a) It shall be unlawful for any person to perform in a public place, or for any person who owns or operates premises constituting a public place to knowingly permit or allow to be performed therein, any of the following acts or conduct:

(1) The performance of acts or simulated acts of sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation, or any sexual acts which are prohibited by law;

(2) The actual or simulated touching, caressing, or fondling on [sic] the breasts, buttocks, anus or genitals in public; or

(3) The actual or simulated public displaying of the pubic hair, anus, vulva or genitals.

(b) It shall be unlawful for any female to appear in a public place so costumed or dressed that one or both breasts are wholly or substantially exposed to public view, and it shall be unlawful for an owner or operator or manager of premises constituting a public place to knowingly permit or allow any such person to appear on the premises owned or operated by him. "Wholly or substantially exposed to public view," as it pertains to breasts, shall mean the showing of the female breast in a public place with less than a fully opaque covering of any portion of the breasts below the top of the nipple.

(c) For the purposes of Section 22–23–5, "public place" shall include: streets, sidewalks, or highways; transportation facilities; schools; places of amusement; parks; playgrounds; restaurants; nightclubs; cocktail lounges; burlesque houses; bars; cabarets; taverns; taprooms; private fraternal, social, golf or country clubs; or any place that allows the consumption of intoxicating beverages on the premises.

(d) Any person violating any of the provisions of this Section, upon conviction by the court, shall be subject to a fine up to an amount of fifty dollars ($50.00). Each violation shall be deemed a separate offense.

Code of Ordinances, City of Memphis, Tennessee, Section 22–23.5 (1983).

Plaintiffs raise numerous claims based on the United States Constitution which they believe will entitle them to the relief sought. In particular, the plaintiffs argue (1) that the ordinance is unconstitutional because it violates their fundamental right to work as protected by the U.S. Constitution; (2) that the ordinance on its face permits gender-based discrimination against females and, thus, violates the plaintiffs' right to equal protection under the Fourteenth Amendment; (3) that the ordinance is unconstitutional because it deprives the plaintiffs of First Amendment rights; (4) that the ordinance is unconstitutionally overbroad; (5) that the ordinance is unconstitutionally vague; and (6) that the ordinance is being enforced in a selective, discriminatory, and harassing manner that violates the plaintiffs' rights to due process and equal protection.

Upon filing this action, plaintiffs petitioned this Court to issue a temporary restraining order against the enforcement of this ordinance. This relief was denied. The defendants thereafter filed a motion to dismiss plaintiffs' case. On May 20, 1983, a hearing was held by this Court on plaintiffs' application for a preliminary injunction and defendants' motion to dismiss.

Plaintiffs Lisa Tolbert and Phyllis Jones are professional topless dancers at the Club Tiffany in Memphis, Tennessee. They dance there as independent contractors rather than as employees. Plaintiff Steve Cooper is the owner and operator of several

**1288**

adult bars or lounges that feature topless dancers, including Club Tiffany.

Shortly after the ordinance was enacted, Phyllis Jones was arrested and charged with a violation of the ordinance. At the time of the hearing in this Court, her case was still pending in the City Court. Neither of the remaining plaintiffs has been arrested for violations of the ordinance, but both fear that they will be arrested. Nevertheless, this case and Plaintiff Jones' pending City Court prosecution raise a difficult issue: should this Court abstain from the issuance of any declaratory or injunctive relief? *See* 28 U.S.C. § 2283.

## ABSTENTION

In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the United States Supreme Court advanced the proposition that, in the absence of extraordinary circumstances, a federal court may not interfere with a pending criminal prosecution in a state court. *Id.* at 41, 91 S.Ct. at 749. Instead, the criminal defendant must first seek relief by raising his federal claim as a defense to the state court prosecution. This principle has been extended to preclude interference with state judicial processes even where no specific injunction against a pending prosecution is sought. *O'Shea v. Littleton,* 414 U.S. 488, 500, 94 S.Ct. 669, 678, 38 L.Ed.2d 674 (1973). *See also Parker v. Turner,* 626 F.2d 1 (6th Cir.1980).

The defendants herein argue in their motion to dismiss that Phyllis Jones' pending State Court prosecution bars this Court from granting the declaratory and injunctive relief sought in this case. The plaintiffs respond to this argument by asserting that this case falls within the "extraordinary circumstances" exception to the *Younger* doctrine. Specifically, the plaintiffs argue that the defendants are engaging in "bad faith" and "harassment," as those terms are defined by the *Younger* doctrine, in the prosecution or threatened prosecution of the plaintiffs for violation of the ordinance. *See Younger v. Harris,* 401 U.S. at 48–50, 91 S.Ct. at 752–753. Additionally, the plaintiffs argue that because the Supreme Court of Tennessee has previously upheld the constitutionality of this ordinance as adopted by another municipality, *see City of Chattanooga v. McCoy,* 645 S.W.2d 400 (Tenn.1983), any attempt to raise the constitutionality of this ordinance as a defense to a state court prosecution would be futile and, thus, the plaintiffs are without an adequate remedy at law. This Court finds merit in both of the plaintiffs' arguments.

■ The question of bad faith as one of the "extraordinary circumstances" in the *Younger* sense is largely a question of fact to be determined by the judge in deciding whether to issue an injunction. *Wilson v. Thompson,* 593 F.2d 1375, 1388 (5th Cir. 1979). Some of the factors considered in making this determination include: (1) whether the state prosecution is intended to have a chilling effect on the exercise of First Amendment freedoms; (2) whether the ordinance is patently unconstitutional; (3) whether the statute or ordinance is being selectively enforced or is being enforced in a harassing or unconstitutional manner; (4) whether the state prosecution has been brought without any reasonable expectation of obtaining a valid conviction; and (5) whether the state's conduct involves threats of future prosecution. Although this list of factors is not exclusive and no single factor should be considered to be determinative, this list does represent an appropriate backdrop for the consideration of the first part of plaintiffs' "extraordinary circumstances" claims.

■ The plaintiffs allege and the testimony adduced at the hearing before this Court reveals that this ordinance is being enforced in a selective manner. The testimony of Police Director John D. Holt and Vice-Squad Officer Hammons reveals that the ordinance is being enforced exclusively by vice-squad officers against clubs that feature topless dancers. Both of these police officials admit, however, that the ordinance could be, but has not been, applied in other situations. In particular, it was noted at the hearing that the police refused to enforce the ordinance during the Metropolitan Opera Company's performance of *Mac-*

*beth* either against the topless performer on the stage playing the part of one of the witches, or against some persons in the audience who stood topless during the topless performance on stage. These persons were protesting the refusal of the city officials to prosecute the witch even though all of this occurred in a "place that allows the consumption of intoxicating beverages on the premises." Police Director Holt testified that he had sought the advice of the city attorney when he learned that the opera contained a scene wherein one of the famous witches in *Macbeth* would perform with bare breasts and that some of the topless club performers intended to attend the opera and bare their breasts during the witches' scene. Director Holt was advised that the witches' breasts would be "art" and therefore permissible and that while the protesters' breasts would be a violation of the ordinance, the police should not be present in the theater at the time because a situation might be created which the Memphis Police Department could not handle. Therefore, Director Holt ordered all officers who might normally be involved not to be in the theater where the opera was to be performed and violations of the ordinance were anticipated. Subsequently, three ranking police officers were disciplined for being at the theater the night of the opera.

The testimony presented to this Court also reveals that the ordinance is being enforced in a harassing manner. Although the ordinance only provides a maximum penalty of a fifty dollar fine and although similar misdemeanors and lesser offenses are enforced by "citing" the violators into court, those persons who have been charged with violating this ordinance have been arrested, taken to the Shelby County Jail, and forced to be incarcerated inordinate lengths of time before bond could be posted in their behalf. Through the testimony of Inspector W.J. Wood, Commander of Records for the Shelby County Sheriff's Department, the following list of persons arrested for violation of the ordinance was entered into evidence along with a record of the time each individual spent in jail after being processed:

| NAME | DATE OF ARREST | TIME IN JAIL |
|---|---|---|
| Annie Corrine Hubbard | 5/13/83 | 6 hours/8 min. |
| Charles Lamar Garrison | 5/13/83 | 12 hours/6 min. |
| Charles Lamar Garrison | 4/21/83 | 16 hours/1 min. |
| Marcella Anne Tice | 5/13/83 | 15 hours/12 min. |
| Edward Lee Hall | 5/13/83 | 10 hours/23 min. |
| Phyllis Ann Jones | 4/21/83 | 7 hours/42 min. |
| Ruth Evelyn Young | 4/21/83 | 7 hours/51 min. |
| Charles Capps | 4/21/83 | 7 hours/56 min. |
| Barbara Barker | 4/11/83 | 5 hours/38 min. |
| Patricia C. Barnes | 4/11/83 | 5 hours/37 min. |
| Jeri Scrogham | 4/21/83 | 7 hours/32 min. |

These arrestees were held in the Shelby County Jail for not posting bond despite the fact that at least two of these arrestees, Barbara Barker and Patricia C. Barnes, had more than enough cash on their persons to post bond in the amount of the maximum fifty dollar penalty.

Finally, as evidenced by the Court's discussion below, it appears that the ordinance directly chills the exercise of First Amendment freedoms, *see, e.g., Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), and that the ordinance is, on its face, unconstitutionally vague and overbroad. In other words, the ordinance appears to be patently unconstitutional.

In sum, this Court is convinced that the plaintiffs have satisfied the "extraordinary circumstances" exception to the *Younger* doctrine. This Court however will not rest its refusal to abstain from granting the relief sought in this case solely on the basis of "extraordinary circumstances."

It is well recognized that a federal court is obligated to abstain under the *Younger* doctrine in constitutional cases only where the federal plaintiffs have an adequate opportunity to press their constitutional claims in state court. *See Juidice v. Vail,* 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977). *See also J.P. v. DeSanti,* 653 F.2d 1080 (6th Cir.1981). In equity terms, the remedy at law must be adequate. Where the state's highest court has ruled against the constitutional position taken by the plaintiffs in the federal court, the federal court is not obligated to abstain and thus force the plaintiffs to pursue futile claims and appeals in the state court

system. *Mastin v. Fellerhoff,* 526 F.Supp. 969, 971 (S.D.Ohio 1981).

■ Although the Memphis ordinance has not been challenged in any state appellate forum, a Chattanooga, Tennessee ordinance that contains the same provisions, almost word for word as those found in the Memphis ordinance, has received such a challenge. In *City of Chattanooga v. McCoy,* 645 S.W.2d 400 (Tenn.1983), the Tennessee Supreme Court held that the Chattanooga ordinance represented a valid exercise of the city's police power, that the ordinance was not constitutionally overbroad, and that the ordinance did not violate the First Amendment. It would certainly appear that this decision would be controlling in any state court ruling on those constitutional defenses. In other words, abstention by this Court would force the plaintiffs to raise futile claims and appeals in the state court system as to some defenses; thus, it appears that the state court remedy is inadequate and that abstention is not required.

## CONSTITUTIONAL CLAIMS

It is now appropriate to turn to an examination of the constitutional claims advanced by the plaintiffs as evidence of the plaintiffs' likelihood of success on the merits of the case. This Court rejects plaintiffs' first constitutional claim that the ordinance deprives plaintiffs of their fundamental right to work. Plaintiffs only have a fundamental right to work as topless dancers or as managers of topless clubs if their work involves a constitutionally protected activity. If this Court were to determine that such dancing is not constitutionally protected, then the City of Memphis could prohibit that activity as a valid exercise of its police power. *See, e.g., City of Chattanooga v. McCoy, supra.*

■ Plaintiffs advance two arguments involving the equal protection clause of the Fourteenth Amendment, the first such argument being that the ordinance on its face establishes a constitutionally impermissible gender-based classification. The Court finds this first equal protection argument to

be without merit. The only aspect of the ordinance at issue in this case that could be construed as discriminating against women is that the ordinance on its face is directed solely against the exposure of the female breast in a public place. In our culture, for the purpose of this type ordinance, female breasts are a justifiable basis for a gender-based classification. *See generally, Mississippi University For Women v. Hogan,* ——U.S. ——, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982).

This Court has already noted that plaintiffs' second equal protection argument that the City of Memphis has selectively enforced the ordinance has merit. Both Police Director John D. Holt and Vice-Squad Officer Hammons testified that only the members of the vice squad have been given copies of the ordinance, that police officers in other parts of the police department have not been told about this ordinance, that only topless clubs are periodically checked for violations of this ordinance, and that only people associated with topless clubs have been arrested for violations of this ordinance. As previously noted, Police Director Holt also testified that he ordered police officers not to enforce this ordinance against a bare-breasted witch in a Metropolitan Opera production. The express language of the ordinance, however, clearly covers the topless performance in *Macbeth:* "It shall be unlawful for any female to appear in a public place so costumed or dressed that one or both breasts are wholly or substantially exposed to public view." Undoubtedly Police Director Holt was acting upon the advice of the City Attorney, which was based upon dictum in *City of Chattanooga v. McCoy,* 645 S.W.2d at 403, where the court indicated that operas, ballets, and plays were not included in the ordinance even though the language did not so provide. However, that court-made exclusion was based upon the principle that operas are subject to First Amendment protection whereas topless dancers are not. The Supreme Court of the United States does not so hold. *Doran v. Salem Inn, supra.*

In *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), the Supreme Court held that if a law, even if fair on its face and impartial in appearance, "is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discrimination between persons in similar circumstances, material to their rights, [such] denial of equal justice . . ." is constitutionally prohibited. *Id.* at 373–374, 6 S.Ct. at 1073. This Court concludes that the City of Memphis has selectively enforced the ordinance and, thus, has violated plaintiffs' rights to due process and equal protection.

Plaintiffs further claim that the ordinance challenged in the instant case is unconstitutionally overbroad and vague and therefore not fair on its face. Just as the ordinance held to have been unconstitutionally overbroad in *Doran v. Salem Inn, Inc., supra,* the ordinance challenged in this case "applies not merely to places which serve liquor but to many other establishments as well." 422 U.S. at 933, 95 S.Ct. at 2568. The ordinance challenged in the instant case prohibits performing in any public place not only actual or simulated acts of sexual intercourse, actual or simulated touching, caressing or fondling of the breasts, buttocks, anus, or genitals, actual or simulated displaying of the pubic hair, anus, vulva, or genitals, but also prohibits mere exposure of one or both female breasts in any public place. The ordinance defines "any public place" as including "streets, sidewalks, highways, transportation facilities, schools, places of amusement, parks, playgrounds, restaurants, nightclubs, cocktail lounges, burlesque houses, bars, cabarets, taverns, taprooms, private fraternal, social, golf or country clubs *or any place that allows the consumption of intoxicating beverages on the premises.*" (Emphasis added.)

It is the opinion of this Court that the express language of the ordinance covers the following constitutionally protected activities: the performance by the bare-breasted witch in the Metropolitan Opera production of *Macbeth;* the production of the musical *Hair,* acknowledged to be constitutionally protected expression in *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); a woman engaged in an exhibition at a meeting the purpose of which is to educate about and encourage infant breast feeding (Vice Squad Officer Hammons testified that the ordinance probably applies to this particular conduct); and models posing in the nude for art classes. Thus, what the Supreme Court quoted with approval from the lower court in *Doran v. Salem Inn, Inc., supra,* in support of the Supreme Court's holding that the ordinance challenged in that case was overbroad, is particularly relevant to the instant case:

> The local ordinance . . . not only prohibits topless dancing in bars but also prohibits any female from appearing in a public place with uncovered breasts. There is no limit to the interpretation of the term any public place. It could include the theatre, town hall, opera house, as well as a public market place, street, or any place of assembly indoors or outdoors. Thus this ordinance would prohibit the performance of the Ballet Africans and a number of other works of unquestionable artistic and socially redeeming significance.

422 U.S. at 933, 95 S.Ct. at 2568. (citation omitted.) The Supreme Court noted further that it had

> previously held that even though a statute or ordinance may be constitutionally applied to the activities of a particular defendant, that defendant may challenge it on the basis of overbreadth if it is so drawn as to sweep within its ambit protected speech or expression of other persons not before the court.

*Id. See also Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). This same reasoning followed by the Supreme Court in *Doran v. Salem Inn, Inc., supra,* leads this Court to conclude that the ordinance challenged in the instant case is unconstitutionally overbroad.

Laws that are unconstitutionally vague fall because persons who must conform their conduct to the law are entitled to fair notice of what is permitted and proscribed. *Village of Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Grayned v. City of Rockford, supra.* Fair notice protects those who might otherwise stray into the regulated area, prescribes standards for law enforcement officers, and preserves legitimate activity against the chill that flows from a law of uncertain scope. *Grayned v. City of Rockford,* 408 U.S. at 108–109, 92 S.Ct. at 2298–2299. The Supreme Court has declared further that a law is facially vague if its terms are so loose and obscure that they cannot be clearly applied in any context. Such a "law is incapable of any valid application," *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), because it does not provide any standards against which one's conduct may be measured. *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974).

At the preliminary injunction hearing held in this case, Police Director Holt testified that he did not know what the ordinance meant and that if he needed to interpret the ordinance, he would first contact the Office of the City Attorney. Vice-Squad Officer Hammons also testified that the ordinance was difficult to understand. Thus, this ordinance provides little or no guidance to law enforcement officers trying to enforce it or to citizens trying to conform their conduct to the ordinance. This Court notes, for example, that the following phrase used in the ordinance as part of the definition of "public place" is both overbroad and vague: "any place that allows the consumption of intoxicating beverages on the premises." It is conceivable that this phrase could apply to a private residence. This Court concludes, therefore, that the ordinance challenged in this case is unconstitutionally vague.

Plaintiffs' final constitutional claim is that nude dancing is constitutionally protected as First Amendment freedom of speech. At least three different state Supreme Courts have held that nude dancing may be prohibited as a valid exercise of a city's or state's police power. *See State v. Baysinger,* 397 N.E.2d 580 (Ind.1980); *Gabriele v. Town Of Old Orchard Beach,* 420 A.2d 252, 257 (Me.1980); *City of Chattanooga v. McCoy, supra.* The Supreme Court of Tennessee noted, however, that the defendant dancers in *City of Chattanooga v. McCoy, supra,* asserted "no claim that their conduct involved any speech or expression of ideas entitled to First Amendment protection." 645 S.W.2d at 403. Such is not the case here. Furthermore, the United States Supreme Court has acknowledged in at least four decisions that nude dancing is entitled to some First Amendment protection: *Schad v. Mount Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); *Doran v. Salem Inn, Inc., supra; Southeastern Promotions, Ltd. v. Conrad, supra;* and *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972).

Plaintiffs in *Schad v. Mount Ephraim, supra,* were nude dancers who successfully challenged on First Amendment grounds a zoning ordinance that prohibited *all* live entertainment, including nude dancing, within the city limits. The Supreme Court began its analysis of the constitutionality of the Mount Ephraim zoning ordinance by noting that "[b]y excluding live entertainment throughout the Borough, the Mount Ephraim ordinance prohibits a wide range of expression that has long been held to be within the protections of the First and Fourteenth Amendments." 452 U.S. at 65–66, 101 S.Ct. at 2181. The Supreme Court noted further that

[e]ntertainment, as well as political and ideological speech, is protected; motion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works, fall within the First Amendment guarantee. *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495 [72 S.Ct. 777, 96 L.Ed. 1098] (1952); *Schact v. United States,* 398 U.S. 58 [90 S.Ct. 1555, 26 L.Ed.2d 44] (1970); *Jenkins v. Georgia,* 418 U.S. 153 [94 S.Ct. 2750, 41 L.Ed.2d

642] (1974); *Southeastern Promotions, Ltd. v. Conrad, [supra]; Erznoznik v. City of Jacksonville,* 422 U.S. 205 [95 S.Ct. 2268, 45 L.Ed.2d 125] (1975); *Doran v. Salem Inn, Inc., [supra].*

452 U.S. at 65–66, 101 S.Ct. at 2181.

The Supreme Court reviewed its earlier decisions on the question of whether nude dancing may be constitutionally protected and concluded that

an entertainment program [may not] be prohibited solely because it displays the nude human figure. 'Nudity alone' does not place otherwise protected material outside the mantle of the First Amendment. *Jenkins v. Georgia, supra,* [418 U.S.] at 161 [94 S.Ct. at 2755]; *Southeastern Promotions, Ltd. v. Conrad, supra; Erznoznik v. City of Jacksonville, supra,* [422 U.S.] at 211–212, 213 [95 S.Ct. at 2274]. Furthermore ... nude dancing is not without its First Amendment protections from official regulation. *Doran v. Salem Inn, Inc., supra; Southeastern Promotions, Ltd. v. Conrad, supra; California v. LaRue, [supra].*"

452 U.S. at 66, 101 S.Ct. at 2181. The Supreme Court thus concluded in *Schad v. Mount Ephraim* that the plaintiff nude dancers were "entitled to rely on the impact of the ordinance on the expressive activities of others as well as their own," in arguing that the challenged zoning ordinance was unconstitutional. *Id.*

In *Doran v. Salem Inn, Inc., supra,* the Supreme Court stated that

[a]lthough the customary "barroom" type of nude dancing may involve only the barest minimum of protected expression, we recognized in *California v. LaRue, [supra],* that this form of entertainment might be entitled to First and Fourteenth Amendment protection under some circumstances. In *LaRue,* however, we concluded that the broad powers of the States to regulate the sale of liquor, conferred by the Twenty-First Amendment, out-weighed any First Amendment interest in nude dancing and that a State could therefore ban such dancing as a part of its liquor license program.

422 U.S. at 932, 95 S.Ct. at 2568. In the instant case, the City of Memphis has apparently attempted, through the same ordinance, to restrict certain entertainment, to prohibit the display of breasts in public places, to regulate the sale of alcohol, and to legislate the morals of persons who patronize topless dance locations and the dancers there. If the city authorities wish to avail themselves of the powers granted by the Twenty-First Amendment (restoring alcohol control to states), they should adopt an ordinance which complies with the Constitution and not apply it in an unconstitutional manner.

The constitutional protection to which plaintiffs are entitled requires that the city may regulate plaintiffs' conduct only if the regulation is clearly supported by the Twenty-First Amendment or if the regulation is substantially related to a legitimate governmental interest and is drawn narrowly and clearly so that it may apply only to the particular conduct it seeks to regulate. The ordinance challenged in the instant case, however, does not appear to satisfy these constitutional requirements.

It appears to the Court that the continued enforcement or threats of enforcement of the ordinance of the City of Memphis passed March 29, 1983, and titled PERFORMANCES, LEWD AND INDECENT ACTS AND CONDUCT, will irreparably harm the plaintiffs and others because of the chilling effect upon recognized First Amendment rights. Similarly, it appears that the plaintiffs will ultimately be entitled to a judgment declaring the ordinance unconstitutional on its face and as applied. Therefore, this Court concludes that the defendants should be enjoined preliminarily from the prosecution and any other form of enforcement or threat thereof of the March 29, 1983 ordinance. Therefore, the Clerk is hereby directed to cause to be entered such a preliminary injunction upon the filing of this Ruling.