**EMPLOYERS RESOURCE MANAGEMENT CO., et al., Plaintiffs,**

v.

**Preston C. SHANNON, et al., Defendants.**

**COMMONWEALTH OF VIRGINIA, Plaintiff,**

v.

**EMPLOYERS RESOURCE MANAGEMENT CO., et al., Defendants.**

**Civ. A. Nos. 3:94cv148, 3:94cv157.**

United States District Court, E.D. Virginia, Richmond Division.

Nov. 22, 1994.

---

John D. Epps, Steven W. Morris, LeClair, Ryan, Joynes, Epps & Framme, Richmond, VA, and Allan J. Graff and Robert W. Ridley, Farmer & Ridley, Los Angeles, CA, for Employers Resource Management Co. and American Employers Benefit Trust.

Anthony J. Gambardella, Jr., Peter B. Smith, and Michael D. Thomas, State Corp. Comm'n., Office of Gen. Counsel, Richmond, VA, for Preston C. Shannon, et al. and Com. of Va.

## MEMORANDUM OPINION

PAYNE, District Judge.

On March 3 and 4, 1994, Employers Resource Management Co. ("ERM") initiated two actions in this court. The first action ("Case I"), in which ERM and American Employers Benefit Trust ("the Trust") are plaintiffs, prays for a declaration that ERISA preempts the application of Virginia state law regulating multiple employer welfare arrangements ("MEWAs") and for an injunction precluding state officials from proceeding with an action to enforce state law in the Virginia State Corporation Commission ("SCC"). Defendants, state officials, move the court to dismiss, stay, or abstain from adjudicating the case, and they move for judgment on the pleadings.

The second action ("Case II") came to this court upon removal by ERM and the Trust of pending state proceedings in the SCC that were begun by the Commonwealth of Virginia on February 18, 1994. The Commonwealth moves to remand this action. The ultimate question in both actions—the question that either a state court or this court must eventually decide—is whether ERM and the Trust are part of a MEWA such that ERISA does not preempt state regulation. *See* 29 U.S.C. § 1144(b)(6).

This court does not reach that ultimate question, however. Case II, as initiated by the Commonwealth, does not "arise under" federal law for purposes of 28 U.S.C. § 1331, which outlines the parameters of federal question jurisdiction. This conclusion, then, determines the result in Case I, as well, given both the Anti–Injunction Act, 28 U.S.C. § 2283, and the abstention principles set forth in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and subsequent cases. Because the state proceedings were begun before ERM initiated Case I, the injunction and the declaratory judgment sought in Case I, which would operate to enjoin the state proceedings associated with Case II, are not within the power of this court to grant. Virginia's state judicial system is capable of dealing with the preemption defense that ERM has raised. For the reasons set forth below, both the Commonwealth's motion to remand Case II and the state officials' motion to dismiss Case I are granted.

## BACKGROUND

### A. Procedural Facts

The parties have stipulated to most of the important facts. For purposes of remanding the entire controversy, including the question of ERISA preemption, only the procedural facts are substantially relevant.

ERM's trouble with state agencies began on November 18, 1991 when the Bureau of Insurance ("the Bureau") advised ERM that it might be operating in Virginia in violation of the SCC's rules governing MEWAs. ERM responded to the Bureau on January 2, 1992, arguing that ERISA preempted state regulation and representing that it stood prepared to file an action "in the appropriate forum" to enjoin the Commissioner of Insurance from enforcing state law. Stip., ¶ 15. A few days later, the Bureau countered by

suggesting that the United States Department of Labor ("the DOL") could help resolve the dispute.

While maintaining that the Bureau had no jurisdiction and refusing to provide the Bureau with any documents, ERM did supply the DOL with requested documents. On May 28, 1992, ERM responded to an April 30 request by the DOL for information describing ERM's business, the current trust agreement of its employee welfare benefit plan, and an example of a contract between ERM and one of its client employers. After a formal request on June 23, 1992 by the Bureau for an opinion from the DOL, the DOL issued Advisory Opinion 93–29A(c), dated November 2, 1993, which found ERM was a MEWA subject to state regulation.

Next, on February 18, 1994, the Commission issued an Order to Take Notice informing ERM and the Trust that it would enter a cease and desist order after March 7, 1994 if ERM did not file a responsive pleading to object before that date. On March 3, ERM did respond. The next day, it removed that pending state proceeding to this court. Also on March 3, ERM filed a complaint in this court seeking an injunction and a declaratory judgment. Nothing of moment has occurred at the state level since March 3, when ERM filed its response to the Order to Take Notice.

### B. State Law

Virginia specifies most of the judicial function of the SCC at Va.Code §§ 12.1–12, –13. These duties include "the duty of administering the laws made for the regulation and control of corporations doing business" in Virginia. Chapter 5 of Title 12 details the procedure the SCC follows and the right of litigants to appeal its decisions. Specifically, § 12.1–39 provides that "any party aggrieved by any final ... judgment of the Commission shall have, of right, an appeal to the Supreme Court irrespective of the amount involved." Moreover, no other state court may interfere with the Commission's proceedings. *Id.*

The substantive state law licensing requirements supporting the Commission's Order to Take Notice are found in certain rules governing MEWAs adopted by the Commission pursuant to Va.Code § 38.2–223. These rules define MEWAs and subject them to licensing requirements "as an insurance company, health maintenance organization, health services plan, or dental or optometric services plan pursuant to Title 38.2 of the Code of Virginia." *See* Commission's Rules Governing MEWAs § 5.A, *in* Commonwealth's Memorandum in Support of Motion to Remand, Ex. 2. A MEWA is defined in § 4 of those rules. The Commission's definition of MEWA tracks rather closely the definition of MEWA provided by ERISA at 29 U.S.C. § 1002(40)(A), which encompasses most arrangements that offer certain employee welfare benefits "to the employees of two or more employers." ERISA specifically provides that state regulation of such arrangements is not completely preempted. *See* 29 U.S.C. § 1144(b)(6)(A).

### C. The Business of ERM

ERM's clients are employers. Each client and ERM are, in the language used by ERM, "co-employers" of the client's employees. When a new client enters an arrangement with ERM, its employees continue to work for the benefit of the client, which remains practically the sole overseer of the employees' work. ERM's primary role is to perform certain administrative functions: paying employees' their wages, paying employer taxes, being responsible for state and local employee payments or withholdings from wages, and, not least of all, maintaining a plan to provide employees with certain medical and death benefits. It also administers an occupational and worker safety program that all of its clients must follow. There exist substantial disputes respecting whether ERM is an employer and what legal principles should govern the resolution of that dispute. It is, however, not necessary to decide those issues.

### DISCUSSION

### A. Remand of Case II

As a general proposition, Virginia, like every other state, by virtue of its police power, has the right to regulate businesses operating within its borders. This right is

limited, however, by the United States Constitution, including the Supremacy Clause. When a party argues that a state, which has instituted a suit to enforce state regulation against the party, cannot enforce its regulation consistently with the Supremacy Clause, it raises a federal preemption defense to a state claim. The case arises, then, not under federal law, but under state law. And even where "both parties admit that the only question for decision is raised by a federal pre-emption defense," the well-pleaded complaint rule precludes the exercise of jurisdiction by federal courts. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 12, 14, 103 S.Ct. 2841, 2848, 2849, 77 L.Ed.2d 420 (1983); *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987) ("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint....") (emphasis in original).

■ *Franchise Tax Board* is indeed very much on point. There, a state agency sued a welfare benefit trust in state court, demanding money from the trust to cover unpaid personal income tax. The state agency also sought a declaration that ERISA did not preempt state regulation. 463 U.S. at 5–7, 103 S.Ct. at 2844–45. The Court found the case could not be removed on the basis of ERISA preemption, which related to both the tax levy and the declaratory judgment. *Id.* at 7, 103 S.Ct. at 2845. Using a "straightforward application" of the well-pleaded complaint rule, the Court disposed of the first cause of action, concerning the tax levy, rather simply. It explained,

> California law establishes a set of conditions, without reference to federal law, under which a tax levy may be enforced; federal law becomes relevant only by way of a defense to an obligation created entirely by state law, and then only if [plaintiff] has made out a valid claim for relief under state law.

*Id.* at 13, 103 S.Ct. at 2848. Likewise, ERM's argument concerning the federal definition of MEWA is a defense to attempted enforcement of state regulation. Thus, the court must remand the case as the United States Supreme Court dictated in *Franchise Tax Board.*

■ ERM suggests that a federal question is inherent in the Order to Take Notice, or complaint, because federal law controls the definition of a MEWA. While the federal definition is controlling with respect to the preemption defense, the state definition controls the complaint. If ERM does not fit within the definition of arrangements governed by the SCC's rules, then the SCC fails to make out "a valid claim for relief under state law." The federal definition, for this purpose, need not even be consulted. Even if the state and federal definitions were precisely the same, or if the state law specifically referred to the definition of MEWA given by ERISA, the result would remain unchanged. Any state statute could read, "The following regulation is valid to the extent it is not preempted by federal law." But even in such a case, the reference to federal law would not give rise to federal question jurisdiction for cases brought alleging violations of the state statute.

ERM cites *North Davis Bank v. First Nat'l Bank of Layton,* 457 F.2d 820 (10th Cir.1972). There, the plaintiff sought, pursuant to a state law that described how and where a bank's branch offices could be established, to enjoin the defendant national bank's construction of a new facility. Federal law provided that a national bank could establish a branch only if the host state permitted its state banks to establish a branch in the same way, and it defined the term "branch." *Id.* at 821–22 & n. 3. Finding that federal law controlled the definition of what constituted a branch office for the defendant national bank, the Court of Appeals upheld federal court jurisdiction. *Id.* at 823. In the same way, ERM argues, federal law controls the definition of MEWA so that a federal question is raised by the SCC's complaint.

The persuasive value of *North Davis Bank* is lost, however, with the understanding that the court there sustained the exercise of jurisdiction because of a perceived distinction between a federal defense and a claim of

preemption. Several subsequent decisions criticized *North Davis Bank,* found its distinction unconvincing, and held that preemption was a federal defense that would not support federal question jurisdiction. *See, e.g., Lawrence Co., S.D. v. State of S.D.,* 668 F.2d 27, 31 & n. 2 (8th Cir.1982); *Smart v. First Federal S & L Assoc.,* 500 F.Supp. 1147, 1154 (E.D.Mich.1980). Most importantly, of course, the Supreme Court of the United States, in *Franchise Tax Board* and *Caterpillar Inc.,* has since clarified the import of a preemption defense, as discussed above.

## B. Dismissal of Case I

■ *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), makes clear that a federal court generally has jurisdiction pursuant to 28 U.S.C. § 1331 over claims seeking an injunction against any application of state law allegedly preempted by federal law. *Id.* at 96 n. 14, 103 S.Ct. at 2899 n. 14. Other considerations enter the picture, however, when a state proceeding to enforce such state law begins before the injunction action in federal court. The basic controversy here having been remanded to the SCC in its judicial capacity, the court cannot interfere with these state proceedings, which began several days before any action in this court, by issuing an injunction or a declaratory judgment concerning issues that the SCC must decide. Both the Anti–Injunction Act and *Younger v. Harris* require this conclusion.

### 1. The Anti–Injunction Act

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress. . . ." 28 U.S.C. § 2283 (the Anti–Injunction Act). The court finds that the injunction and declaratory judgment sought by ERM and the Trust would be "an injunction to stay proceedings in a State court"; it finds further that the ERISA provision at 29 U.S.C. § 1132(a)(3), which authorizes a fiduciary to bring an action "to enjoin

any act or practice which violates any provision" of ERISA, is not an express authorization for injunctions of state proceedings as required by the first exception of the Anti–Injunction Act.

■ ERM seeks to have this court prevent state officials from enforcing state regulation and declare that the regulation is preempted by ERISA. Both remedies would effectively stay proceedings that are pending in the SCC. Although the Supreme Court of the United States has not yet ruled on the issue, most courts agree that a declaratory judgment action is barred if it would interfere with state proceedings in a manner similar to a prohibited injunction. *See, e.g., U.S. Steel Corp. Plan v. Musisko,* 885 F.2d 1170, 1175 (3d Cir.1989), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990); *Ahrensfeld v. Stephens,* 528 F.2d 193, 197 n. 6 (7th Cir.1975); Erwin Chemerinsky, *Federal Jurisdiction* § 11.2, at 558 (1989). Valuing substance over nomenclature, this court agrees with these cases.

■ Perhaps the more controversial question is whether Congress has expressly authorized federal courts to enjoin state proceedings in which a party seeks to enforce state laws preempted by ERISA. The Supreme Court of the United States set forth a two-element test for the "express authorization" exception in *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972): 1) that the federal law confer a uniquely federal right or remedy; and 2) that the federal law "could be given its intended scope only by the stay of a state court proceeding." *Id.* at 237–38, 92 S.Ct. at 2159–60. Interpreting 42 U.S.C. § 1983, the Supreme Court held that the permission given courts to grant injunctive relief[1] was an express authorization exception to the Anti–Injunction Act. It emphasized, however, the legislative history suggesting that Congress "realized that state officers might, in fact, be antipathetic to the vindication of [federally created] rights; and it believed that these failings extended to the state courts." The Supreme Court concluded further that "[t]he

---

1. 42 U.S.C. § 1983 imposes liability upon any person who acts "under color of" state law to deprive another of federal rights. This liability

exists "in an action at law, *suit in equity,* or other proper proceeding for redress" (emphasis added).

very purpose of § 1983 was to interpose the federal courts between the States and the people as guardians of the people's federal rights." *Id.* at 242, 92 S.Ct. at 2162. Obviously, it is less clear the extent to which Congress intended exclusive federal jurisdiction to determine whether ERISA preempts a particular state cause of action.

The only other Supreme Court case on point arguably suggests that the state proceeding in this case would itself have to be a violation of federal law. In *Vendo Co. v. Lektro–Vend Corp.,* 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977), a plurality of the Court, reversing the court below, found that § 16 of the Clayton Act[2] was not an express authorization for injunctions of state court proceedings. Distinguishing *Mitchum* on the second of its two-element test, the plurality of three Justices for whom Justice Rehnquist wrote noted that, whereas a strong distrust of state judiciaries had motivated § 1983, no such motive was implicated by § 16 of the Clayton Act. Every other Justice, two in concurrence and four in dissent, suggested that a state lawsuit could be enjoined if the litigation itself were an antitrust violation. *See id.* at 644–46, 97 S.Ct. at 2894–95 (Blackmun, J., concurring); *id.* at 652–54, 97 S.Ct. at 2898–99 (Stevens, J., dissenting). Thus, both *Mitchum* and *Vendo Co.* (including the concurrence and dissent) suggest that ERISA's authorization for injunctions does not qualify as an exception to the Anti–Injunction Act in the context of the case at bar: nothing in the record suggests that Congress distrusted state courts to rule on an ERISA preemption defense or that the state litigation itself violates ERISA.

The Third and Fifth Circuits have clearly held that 29 U.S.C. § 1132(a)(3) does not authorize an injunction against state proceedings. *See, e.g., The 1975 Salaried Retirement Plan v. Nobers,* 968 F.2d 401 (3d Cir.

1992); *Total Plan Services, Inc. v. Texas Retailers Ass'n,* 925 F.2d 142 (5th Cir.1991).

The Second and Sixth Circuits, on the other hand, have held that an injunction is authorized to stop state proceedings that threaten to tread on areas committed by Congress exclusively to ERISA regulation.[3] *See Gilbert v. Burlington Indus., Inc.,* 765 F.2d 320 (2d Cir.1985), *aff'd without opinion,* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986); *General Motors Corp. v. Buha,* 623 F.2d 455 (6th Cir.1980). The Commonwealth disputes the reach of these cases. Disposing summarily of the last of two "remaining contentions" in the case and citing only 29 U.S.C. § 1132(a)(3) in support, the *Gilbert* court stated simply that a fiduciary of a welfare benefit plan is authorized to seek an injunction of state proceedings. 765 F.2d at 329. The court provided no explanation, failing even to acknowledge the possibility that this ERISA provision did not suffice as an express authorization for purposes of the Anti–Injunction Act.

More analysis was provided by the Sixth Circuit in *Buha.* There, a plan fiduciary that was not a litigant in the state proceedings sought an injunction in federal court against state proceedings to enforce a writ of garnishment served on the trustee of a pension fund. The Sixth Circuit concluded that "[w]hen a district court finds that an action in a state court will have the effect of making it impossible for a fiduciary of a pension plan to carry out its responsibilities under ERISA," the court may enjoin that action notwithstanding the Anti–Injunction Act. *Buha,* 623 F.2d at 459. The decision was based on the second element of the *Mitchum* test. Concerning that element and the necessity of staying state court proceedings to give ERISA its "intended scope," the court stressed that "[i]t is central to the statutory scheme that ERISA not be subject to state

**2.** Section 16, at 15 U.S.C. § 26, entitles a party "to sue for and have injunctive relief, in any court of the United States ... against threatened loss or damage by a violation of the antitrust laws" under the same principles used by courts of equity to prevent harm generally.

**3.** ERISA would not be the only area over which the circuits have split. One commentator has

observed that "there is a substantial split among lower courts as to whether specific statutes, such as the federal securities laws and the federal environmental laws, should be regarded as expressly authorizing injunctions of state court proceedings." Chemerinsky, *supra,* § 11.2.2, at 563 (footnote omitted).

and local laws which might frustrate its goals." *Id.*

That logic is not persuasive. Certainly, no one would dispute that where ERISA preempts state law, state law should not be applied, whether the state law frustrates ERISA's goals or not. The question is whether ERISA preempts state law in this particular case, and the SCC is competent to answer that question. Staying the SCC proceeding is therefore not necessary to give ERISA its "intended scope." The Sixth Circuit's reasoning failed sufficiently to weigh the general rule that "when a state proceeding presents a federal issue, even a preemption issue, the proper course is to seek resolution of that issue by the state court." *Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 149–50, 108 S.Ct. 1684, 1691–92, 100 L.Ed.2d 127 (1988); *see also Texas Employers' Ins. Ass'n v. Jackson,* 862 F.2d 491, 498 (5th Cir.1988) (noting that "construction and application of [the Anti–Injunction Act] is not to be influenced by any 'assumption . . . that federal rights will not be adequately protected in the state courts'") (citing *Amalgamated Clothing Workers v. Richman Bros.,* 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600 (1955)).

Superior logic grounds the decision in *Nobers* wherein the Third Circuit, true to the actual approach taken in *Mitchum,* stated that there was "no evidence that Congress so distrusted state courts that it expected that state courts would fail to comply in good faith with the supersedure and exclusive jurisdiction provisions of ERISA." *Id.* at 410. Thus, ERISA differs significantly from § 1983. The same court in *U.S. Steel Corp. Plan v. Musisko,* 885 F.2d 1170, 1178 (3d Cir.1989), the original Third Circuit case finding ERISA did not fit within an Anti–Injunction Act exception, questioned and distinguished *Buha* and flatly rejected *Gilbert* because it failed to explain its reasoning. In *Musisko,* the court noted that in *Buha,* "the fiduciary was not a party to the state court proceedings, and could not have raised its objections to garnishment there." *Id.* · Given that distinction and because ERM and the Trust are the defendants in the SCC proceeding, the Third Circuit would clearly find

here that the SCC proceeding cannot be enjoined.

In *Texas Retailers,* 925 F.2d at 145 n. 3, the Fifth Circuit rejected the rationale of *Buha.* The district court below had been asked by an insurance company and other plaintiffs to enjoin state proceedings and declare that the state claims brought by a trust and other defendants were preempted by ERISA. Plaintiffs sought that relief after the state court ruled against them. Finding that the Anti–Injunction Act prohibited such an injunction and that the declaratory judgment suit was a "patent attempt" by the insurance company to circumvent the state court proceedings, the district court dismissed the complaint. *Id.* at 143. The Fifth Circuit affirmed this decision, finding the reasoning of *Musisko* accorded with Supreme Court precedent. *Id.* at 145.

The Supreme Court has not addressed the specific question whether ERISA expressly authorizes an injunction against state court proceedings. Conceivably, it could find that some substantive provision of ERISA might be violated by the mere process of state litigation, in which case an injunction of state proceedings might lie. But that circumstance is not presented where, as here, a defendant in a state proceeding simply fears that the state tribunal will not agree that certain state claims are preempted by ERISA. In any event,

> [a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. The explicit wording of § 2283 itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion.

*Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 297, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970). This same "fundamental principle" gives rise to another basis for not enjoining the SCC proceeding.

### 2. *Younger* Abstention

Abstention under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d

669 (1971), requires, at a minimum, "(i) that there is a pending state judicial proceeding; (ii) that the action implicates important state interests and (iii) that there is an adequate opportunity for the plaintiff to raise federal constitutional claims in a state forum." *National Home Ins. Co. v. State Corp. Comm'n,* 838 F.Supp. 1104, 1117 (E.D.Va.1993) (citing *Middlesex Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982)). But even if the three minimum conditions are met, "[a]bstention is still inappropriate if plaintiff can show that (i) the challenged [state] statute 'flagrantly and patently' violates express constitutional provisions or (ii) that plaintiff will suffer irreparable injury if the federal court abstains because there is no adequate remedy at law." *National Home,* 838 F.Supp. at 1119 (citing *Younger,* 401 U.S. at 53–54, 91 S.Ct. at 755).

The facts and arguments in this case implicate only two of these issues. None of the parties suggests that ERM could not raise its federal defense of preemption in the state proceedings, nor that state proceedings were not pending at the time the injunction suit was filed. Additionally, ERM does not allege irreparable injury. Thus, the court need address only the importance of state interests and the possibility of flagrant unconstitutionality.

### a. Important State Interests

The progeny of *Younger v. Harris* is instructive in assessing the importance of state interests in an abstention analysis. The *Younger* doctrine was extended to civil cases in which a state government is a party in *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). After losing a civil nuisance suit brought by state officials in state court, the defendant movie theater brought a § 1983 injunction and declaratory judgment suit in federal district court. On appeal, the *Huffman* Court held that the interests in this civil action were similar enough to those in a criminal proceeding to warrant the extension of *Younger.* This degree of similarity, subsequent cases clarified, is not strictly required, however. In a civil fraud proceeding instituted in state court by the Illinois Department of Public

Aid, the Court decided that *Younger* can apply to civil proceedings, like the instant one, in which a state is a party. *See Trainor v. Hernandez,* 431 U.S. 434, 444, 97 S.Ct. 1911, 1918, 52 L.Ed.2d 486 (1977) (finding *Younger* applicable to interference "with an ongoing civil enforcement action ... brought by the State in its sovereign capacity"). It is clear now that *Younger* can also be applied even in private civil litigation, *see Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), but not in all such litigation, *see New Orleans Public Service, Inc. (NOPSI) v. Council of City of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989).

*Pennzoil* and *NOPSI* help to describe the basic dimensions of *Younger*'s "important state interest" requirement, but greater insight into the doctrine's precise contours can come only from lower court cases. In *Pennzoil,* the Supreme Court found a federal court should have abstained from hearing Texaco's constitutional challenge to a Texas law that apparently would have required Texaco to post a $13 billion bond in order to appeal an extremely adverse judgment rendered in Texas state trial court. The majority reasoned that a concern for "comity" mandated abstention:

> This concern mandates application of *Younger* abstention not only when the pending state proceedings are criminal, but also when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government.

*Pennzoil,* 481 U.S. at 11, 107 S.Ct. at 1526. Rejecting Texaco's argument that important state interests were not implicated, the Supreme Court found that the state was significantly interested in "the processes by which the State compels compliance with the judgments of its courts." *Id.* at 13–14, 107 S.Ct. at 1527–28; *see also id.* at 14, 107 S.Ct. at 1527 (reasoning that "[s]o long as those challenges [to the process by which state judgments are obtained] relate to pending state proceedings," comity demands abstention). Thus, *Pennzoil*'s reasoning does not clearly

determine the outcome where the challenged state statute does not relate to such a process. And ERM challenges not the state process, but the applicability of state regulation to its business.

*NOPSI* confirmed that *Younger* does not apply to all civil litigation. There, a city council filed a declaratory judgment action in state court to verify the propriety of its refusal to permit NOPSI, a utility company, to increase the rates charged to consumers. NOPSI later sued in federal court to challenge the constitutionality of the council's decision. *NOPSI*, 491 U.S. at 355–58, 109 S.Ct. at 2511–13. On appeal, the Supreme Court held that *Younger* abstention was not required "in deference to a state judicial proceeding reviewing legislative or executive action." [4] *Id.* at 368, 109 S.Ct. at 2518.

Lower courts have concluded that state interests like those at stake in the instant case are important enough to warrant *Younger* abstention. In *Kim–Stan, Inc. v. Department of Waste Management*, 732 F.Supp. 646, 652 (E.D.Va.1990) (Merhige, J.), the court found the interest of a state in "the health and safety of its citizens" qualifies as an important state interest justifying *Younger* abstention. An even more relevant qualifying interest, found in a case where the SCC was the defendant, is a state's interest "in protecting consumers from the potential hazards generated by continued operation of financially troubled risk retention groups." *National Home*, 838 F.Supp. at 1117. It seems clear, then, and ERM concedes, "that Virginia has a strong interest in the enforcement of its insurance laws." Plaintiffs' Opposition, at 33. The importance of the state interest is only strengthened by the role of the state as the plaintiff in the state proceeding. *See Trainor*, 431 U.S. at 444, 97 S.Ct. at 1918. ERM argues, however, that this interest is totally preempted by ERISA unless ERM's arrangement is a MEWA, which implicates the question at the heart of the litigation.

The thrust of ERM's argument against abstention, therefore, is that ERISA preemption negates any important state interest, and second, that preemption is so patent as to preclude abstention. Neither argument is correct, as the Supreme Court's discussion in *NOPSI* clearly demonstrates. Concerning the first point, that alleged preemption offsets any state interest, the Supreme Court noted

> when we inquire into the substantiality of the State's interest in its proceedings we do not look narrowly to its interest in the *outcome* of the particular case—which could arguably be offset by a substantial federal interest in the opposite outcome. Rather, what we look to is the importance of the generic proceedings to the State.

*NOPSI*, 491 U.S. at 365, 109 S.Ct. at 2516. Thus, although it is possible that ERM could prevail on the issue of federal preemption and although this would mean Virginia has no interest in the outcome of regulating ERM, this possibility does not change the dispositive generic state interest: that in enforcing state insurance laws.

### b. Patent Unconstitutionality

On the second point, concerning patently or flagrantly unconstitutional state regulation, the Supreme Court in *NOPSI* acknowledged that a "facially conclusive" claim of federal preemption might be sufficient to render abstention inappropriate,[5] but found the claim was not so obvious in that case. It reasoned that "what requires further factual inquiry can hardly be deemed 'flagrantly' unlawful for purposes of a threshold abstention determination." *Id.* at 367, 109 S.Ct. at 2517. This exception to the *Younger* doctrine is extremely narrow. *See* Chemerinsky, *supra*, § 13.4, at 653–54. The Supreme Court has never found a case within this exception, and district court cases are almost as rare. *See National Home*, 838 F.Supp. at 1119 n. 36 ("The 'flagrantly unconstitutional'

---

4. In explaining this statement, however, the Court assumed "that the *Council proceeding* [had to] be the sort of proceeding entitled to *Younger* treatment." *Id.*, 401 U.S. at 369, 91 S.Ct. at 657 (emphasis in original).

5. Just as the Supreme Court left unresolved the issue of the effect of a "facially conclusive" preemption claim in *NOPSI*, so did the Fourth Circuit in its recent decision in *Martin Marietta Corp. v. Maryland Comm'n on Human Relations*, 38 F.3d 1392 (1994).

abstention exception has been so narrowly construed as to be rendered 'virtually meaningless.' ") (citing *Simopoulos v. Virginia State Bd. of Medicine,* 644 F.2d 321, 328 (4th Cir.1981)). *But see Tolbert v. City of Memphis,* 568 F.Supp. 1285 (W.D.Tenn.1983) (finding abstention was not required in the case of selective enforcement of a city ordinance proscribing public exposure of female breasts).

The facts here certainly do not tempt the court to add this case to that limited class of cases finding flagrant unconstitutionality. Without deciding the degree of deference to which the DOL opinion is entitled in considering the merits of the case, that it found ERISA does not preempt state regulation of ERM obviously suggests preemption is not flagrant or patent. Moreover, without analyzing the facts in depth, it is apparent that the SCC can reasonably argue that ERM has established an arrangement to benefit "the employees of two or more employers," 29 U.S.C. § 1002(40)(A), such that state regulation is not necessarily preempted.

### CONCLUSION

■ The Anti–Injunction Act and the *Younger* doctrine necessarily reward the party initiating litigation by favoring its choice of a state forum. They are not unlike other legal doctrines, then, that allow plaintiffs to be the masters of their lawsuits. Under the policy established by all of these doctrines, the defendant must have a compelling reason to disturb the plaintiff's choice of forum. Here, none exists. Although federal law is relevant, it is so only in defense of the action that arises under state law. Moreover, comity and Congress demand that this court not interfere with the proceeding first initiated by the SCC in the state judiciary.

For all of these reasons, defendants' motion to dismiss Case I (3:94cv148) is granted, and plaintiff's motion to remand Case II (3:94cv157) is also granted.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.